UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHAWN D. PATTERSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 2:14-CV-0182-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 14, 16. Attorney Joseph Linehan represents Shawn D. Patterson (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for a period of disability and Disability Insurance Benefits (DIB) on June 8, 2010, alleging disability since October 30, 2004, due to depression, anxiety, chronic pain and insomnia. Tr. 165-168, 181. Plaintiff indicates, however, that he stopped working because of his condition on

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

April 26, 2008.  Tr. 181.  Nevertheless, the relevant period in question begins March 17, 2010, one day after Plaintiff's previously filed claim for disability benefits was denied at the hearing level.  Tr. 18.

The DIB application was denied initially and upon reconsideration.  Administrative Law Judge (ALJ) Caroline Siderius held a hearing on October 11, 2012, Tr. 34-81, and issued an unfavorable decision on October 22, 2012, Tr. 18-29.  The Appeals Council denied review on April 23, 2014.  Tr. 1-6.  The ALJ's October 2012 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 12, 2014.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on October 2, 1972, and was 37 years old on the March 17, 2010, relevant period start date.  Tr. 40.  Plaintiff is a high school graduate and completed one year of college in 1999.  Tr. 182.  He last worked in 2008.  Tr. 40.  Plaintiff reported he stopped working because of his condition.  Tr. 181.

At the administrative hearing, Plaintiff described his bilateral thoracic outlet syndrome as affecting the nerves in his arms:  running down the back of his neck, through his shoulders, into his arms and ending in the pinky and ring fingers in both of his hands.  Tr. 42.  He testified the syndrome made it difficult to squeeze with his hands and lift, Tr. 43, and that, since 2005, using vibrating machinery causes his hands to swell and throb, Tr. 45.  Plaintiff indicated his grip strength has gotten considerably worse over time.  Tr. 46.  He stated he is able to lift his arms overhead, but it will quickly cause his fingers to go numb.  Tr. 55.  He also stated that symptoms from the syndrome made sleep difficult, and he was only able to sleep maybe three or four hours each night.  Tr. 43.

Plaintiff testified he also experiences migraine headaches "at least three days a week" which can last all day. Tr. 53-54. He indicated he also has problems with concentration and short and long term memory. Tr. 58.

Plaintiff testified his two grandchildren, ages two and one, currently lived with him, and he was able to pick them up and have them sit on his lap for a few minutes. Tr. 60, 64. However, he was not able to get down on the ground and play with the grandchildren. Tr. 60. Plaintiff stated he spends his days picking up after the children, keeping an eye on the children and paying the bills. Tr. 48. He indicated he would also mow the lawn, vacuum, sweep the floor, and cook with the help of his teenage children, and would putter in his shop. Tr. 50-51, 59. He stated he can sit in a chair for 10 to 15 minutes before needing to change positions, stand in one place for only five minutes at a time, and walk about half a mile in one stretch. Tr. 56, 60.

With respect to medication, Plaintiff stated he is "anti-drugs" and did not want to take hydrocodone because of the side effects. Tr. 53. He was taking medical marijuana in pill form at the time of the administrative hearing. Tr. 52-53.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational

interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if substantial conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On October 22, 2012, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 17, 2010, the relevant

period beginning date.  Tr. 20.  At step two, the ALJ determined Plaintiff had the severe impairment of bilateral thoracic outlet syndrome.  Tr. 20.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 22.

      The ALJ assessed Plaintiff's residual function capacity (RFC) and determined he could perform a range of light exertion level work (lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to 6 hours a day, and sit for 6 hours a day, with the option of changing positions once an hour), except that he can only frequently climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can frequently kneel, crawl, stoop, crouch, and balance; can frequently, but not constantly, finger, feel and handle; can perform simple, routine and repetitive tasks; is not able to perform fast-paced production requirements; can have frequent, but not constant, contact with the general public; can cope with occasional changes in the work setting; can occasionally push/pull with both arms; and can occasionally overheard reach with both arms.  Tr. 23.  The ALJ concluded at step four that Plaintiff was not able to perform his past relevant work.  Tr. 28.  However, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of mailroom sorter/worker and routine office worker.  Tr. 28-29.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 17, 2010, through the date of the ALJ's decision, October 22, 2012.  Tr. 29.

## ISSUES

      The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to accord weight to the October 21, 2010, opinion of treating physician Jeffrey J. Emery, DO; and

(2) failing to properly consider Plaintiff's testimony about the severity of his symptoms.

### DISCUSSION

**A.   Plaintiff's Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 14 at 13-14.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC determination. Tr. 25.

Although Plaintiff asserts "the ALJ failed to properly consider his testimony regarding the severity of his symptoms," ECF No. 14 at 13, Plaintiff has not specifically and distinctly challenged the ALJ's finding that Plaintiff is not fully credible. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review

only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim." (citations omitted)); *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 (9th Cir. 2010) (refusing to address claims that were only "argue[d] in passing"); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("issues not argued with specificity in briefing will not be addressed"). Plaintiff's opening brief does not raise specific legal arguments which specifically address the rationale provided by the ALJ for finding Plaintiff less than fully credible. ECF No. 14 at 13-14. Nevertheless, the rationale provided by the ALJ for finding Plaintiff's subjective complaints were not entirely credible, Tr. 25-27, is fully supported by the record. *See infra*.

The ALJ first determined that while Plaintiff has physical impairments, the evidence fails to demonstrate he is totally disabled as a result. Tr. 25. The ALJ stated that the objective medical evidence did not support the level of impairment Plaintiff has alleged, Tr. 25-26, and a lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor, *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991).

The ALJ noted that Plaintiff presented to Jeffrey J. Emery, D.O., on January 5, 2009, complaining of exacerbation of left shoulder pain after shoveling snow. Tr. 25, 319. X-rays at that time revealed a normal shoulder. Tr. 25, 323. A November 4, 2009, examination with Dr. Emery revealed Plaintiff was neurologically intact with no edema, and Plaintiff was described as alert and cooperative with mild dysthymic mood with appropriate affect and normal attention and concentration. Tr. 25, 309-310. Dr. Emery noted that Plaintiff was well developed, well-nourished and in no acute distress. Tr. 309. The ALJ indicated that Dr. Emery recommended regular exercise at that time. Tr. 25, 310. The ALJ further noted an April 28, 2011, emergency room evaluation found

Plaintiff's motor examination at 5/5, normal sensory exam, normal finger to nose testing, no pronator drift, and good grips and pedal pushes. Tr. 25, 347. The ALJ also noted Jonathan D. Carlson, M.D., examined Plaintiff on January 10, 2011, and found Plaintiff had intact cognition and full strength in grasp, biceps, triceps, brachioradialis, hip flexors, quadriceps, and dorsal plantar flexion. Tr. 25, 296. Finally, the ALJ indicated Plaintiff had x-ray and MRI scans of the cervical spine in January 2010 that were found to be normal and underwent a brain MRI/MRA in April 2011 which revealed no acute intracranial findings and was an unremarkable scan. Tr. 26, 375-380. It was appropriate for the ALJ to conclude that the objective medical evidence did not support allegations by Plaintiff that he was limited to a greater extent than determined by the ALJ in this case.

The ALJ also indicated Plaintiff has failed to follow up with recommendations made by his treating doctor, which suggests his symptoms may not have been as serious as he has alleged. Tr. 25. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication).

On November 18, 2008, Dr. Emery offered Plaintiff a neuropsychology consultation due to Plaintiff's complaints of memory loss, but Plaintiff declined. Tr. 25, 326. On January 5, 2009, a physiatry consult with Dr. Goodman was recommended by Dr. Emery. Tr. 25, 321. On June 1, 2009, Dr. Emery stated that Plaintiff did not follow up with Dr. Goodman as planned. Tr. 25, 315. On July 14, 2009, Dr. Emery recommended Plaintiff increase his medication dosage and return in one month. Tr. 25, 314. Plaintiff did not follow up with Dr. Emery until nearly four months later, on November 4, 2009. Tr. 25, 308-311. The ALJ additionally

noted Plaintiff has been reported to be "not terribly compliant with medical management [due to] his aversion to taking daily medication." Tr. 25-26, 354. It was proper for the ALJ to find that Plaintiff's failure to follow up and comply with his treating doctor's recommendations suggest his symptoms may not have been as serious as he has alleged.

The ALJ next determined that inconsistences between Plaintiff's statements and the objective medical evidence undermined Plaintiff's credibility. Tr. 26. Inconsistencies in a disability claimant's testimony support a decision by the ALJ that a claimant lacks credibility. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).

The ALJ noted that despite Plaintiff's complaints to his primary care physician regarding depression and chronic insomnia, he reported to Spokane Mental Health that "it's going ok today" and reported his sleep was fine and his appetite was ok. Tr. 26, 396. The ALJ further noted that although Plaintiff indicates he has daily headaches, Dr. Emery's May 2, 2012, report revealed Plaintiff only had intermittent migraines. Tr. 26, 333. Plaintiff also denied any incoordination, numbness, seizures, syncope, depression, disorientation and hallucinations to Dr. Carlson, Tr. 295, which is inconsistent with his reports to his primary care physician. Tr. 26. The ALJ additionally noted Samantha Chandler, Psy.D., referenced in her Psychological Diagnostic Evaluation report that "there were some inconsistencies noted between the claimant's and his wife's Function Report as well as between his current reported information and the information he noted on his Function Report." Tr. 26, 271. Lastly, the ALJ indicated Plaintiff testified at the October 11, 2012, administrative hearing that he had not worked as a volunteer firefighter in over three years; yet in the Job Performance and Productivity Questionnaire completed on March 28, 2011, by Randy Johnson, Deputy Chief of Spokane County Fire District 4, Plaintiff is reported to be employed as a volunteer firefighter from May 22, 2003, to present. Tr. 26, 215.

1   Consequently, there are several inconsistencies in the record which are properly
2   noted by the ALJ.
3         The ALJ also held that the daily activities described by Plaintiff were not
4   limited to the extent one would expect, given the complaints of disabling
5   symptoms and limitations.  Tr. 26.  It is well-established that the nature of daily
6   activities may be considered when evaluating credibility.  *Fair*, 885 F.2d at 603.
7         The ALJ indicated Plaintiff testified he spends time in his garage and
8   picking up after his kids and spends his day looking after the kids and paying bills
9   online; Dr. Chandler reported Plaintiff cares for his youngest daughter, prepares
10  meals, runs errands, helps the kids with homework, and tries to do the chores,
11  doing the dishes once or twice a week, vacuuming twice a week and doing the
12  laundry three times a week; Plaintiff was reported to have painted "almost the
13  entire inside" of the house; Plaintiff testified he is tired all day, yet he states he
14  does not take any naps and tries to keep active; Plaintiff's wife testified Plaintiff is
15  currently working on a remote control car; and there is indication in the record that
16  Plaintiff has continued to volunteer as a firefighter.  Tr. 26.  While one does not
17  need to be "utterly incapacitated" to be disabled, *Fair*, 885 F.2d at 603, the ALJ
18  appropriately determined Plaintiff's level of activity has been somewhat greater
19  than he has alleged in this case.
20        The rationale provided by the ALJ for finding Plaintiff not entirely credible
21  is fully supported by the evidence of record, and the ALJ's determination that
22  Plaintiff's statements were not fully credible is not adequately contested by
23  Plaintiff.  *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th
24  Cir. 2003) (issues not specifically and distinctly contested in a party's opening
25  brief are considered waived).  The ALJ's adverse credibility determination is not
26  erroneous.  Moreover, since Plaintiff was properly found by the ALJ to be not
27  entirely credible, it was appropriate for the ALJ to accord little weight to any
28  medical reports based primarily on Plaintiff's subjective complaints.  *See*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility).

**B.    Dr. Emery's Letter**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by treating physician Emery in a letter dated October 21, 2010. ECF No. 14 at 10-13.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830 (citations omitted). Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be based in part on the testimony of a non-examining medical advisor. *Magallanes v. Bowen*, 881 F.2d 747, 751-755 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). The ALJ must also have other evidence to support the decision. *Magallanes*, 881 F.2d at 751-752; *Andrews*, 53 F.3d 1042-1043. Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

On October 21, 2010, Dr. Emery provided a letter on Plaintiff's behalf which stated that Plaintiff suffered from "a number of medical conditions which

have left him physically unable to maintain any degree of gainful employment." Tr. 267.  The Court finds the ALJ appropriately accorded "little weight" to this October 2010 opinion of Dr. Emery.  *See infra*.

      First, Dr. Emery's October 2010 letter is contradicted by the opinion of nonexamining state agency physician Norman Staley, M.D.  Tr. 27, 125-127.  On August 24, 2011, Dr. Staley reviewed the record and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; was limited to occasionally in his ability to push and/or pull with his bilateral upper extremities; could frequently climb ramps and stairs balance and stoop; could occasionally climb ladders, ropes, and scaffolds, crawl, and reach in any direction, including overhead; and was unlimited in handling, fingering and feeling.  Tr. 27, 125-127.  Dr. Emery's October 2010 opinion that Plaintiff was unable to perform any degree of gainful employment is not consistent with Dr. Staley's August 2011 report.

      Next, the ALJ indicated Dr. Emery only listed Plaintiff's diagnosis in the letter and did not indicate shoulder limitations other than "with limited mobility," Tr. 267, which contradicts Dr. Emery's office notes, Tr. 341-342, 361, 372, that describe Plaintiff "with no focal deficits observed or elicited, well developed, well nourished, in no acute distress, alert and cooperative, mild dysthymic mood with appropriate affect, normal attention span and concentration."  Tr. 27.  An ALJ may discredit a treating physician's opinion that is unsupported by objective medical findings.  *Tonapetyan*, 242 F.3d at 1149.  Here, Dr. Emery's opinion in the letter is unsupported by objective evidence and inconsistent with his own notes.

      The ALJ also noted Dr. Emery appears to have "relied heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported, as he even indicated 'would really need to do more objective testing in order to

quantify objective worsening' regarding his thoracic outlet syndrome." Tr. 27, 354. As discussed above, the ALJ's credibility finding is supported by the evidence of record and free of error, and a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of a claimant. *Tonapetyan*, 242 F.3d at 1149; *see also Morgan v. Comm'r. of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted). Since Plaintiff was properly found by the ALJ to be not entirely credible, *see supra*, the ALJ appropriately accorded little weight to Dr. Emery's October 2010 letter which appears to have been based primarily on Plaintiff's subjective complaints.

Based on the foregoing, the Court finds the ALJ provided specific, legitimate reasons for giving little weight to Dr. Emery's October 2010 letter, and those reasons are supported by substantial record evidence. The Court finds it significant to note that Dr. Emery's statement that Plaintiff is "unable to maintain any degree of gainful employment" is, in any event, not the equivalent to a finding of "disability" under the Social Security Act. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). It is the role of the ALJ to determine whether a claimant is "disabled" within the meaning of the Social Security Act, and that determination is based on both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ did not err by according Dr. Emery's October 21, 2010, letter little weight.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant and the file shall be CLOSED**.

DATED April 27, 2015.



_____
              JOHN T. RODGERS
    UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 14